UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

|  |  |
|---|---|
| ALWAYS COOKING BEST CRABS, LLC <br> 1850 McHenry Street <br> Baltimore, Maryland, 21223 <br><br> Plaintiff, <br> v. <br><br> UNITED STATES OF AMERICA and <br> UNITED STATES DEPARTMENT OF AGRICULTURE <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No._____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR JUDICIAL REVIEW AND FOR VIOLATION OF FOIA**

Plaintiff Always Cooking Best Crabs, LLC, 1850 McHenry Street, Baltimore, Maryland 21223 ("Best Crabs" or "Store"), by and through undersigned counsel, pursuant to 7 U.S.C. §2023, 7 C.F.R. §279.7, and 5 U.S.C. §552(a)(4)(B), hereby files this Complaint against Defendants United States and United States Department of Agriculture ("USDA"), and alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated April 4, 2019, issued by USDA's Food and Nutrition Service ("FNS"), which withdrew Best Crabs' authorization to participate as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP"). This action also is brought based on USDA's violation of the Freedom of Information Act ("FOIA") in connection with a FOIA Request submitted by Best Crabs, dated November 21, 2018, relating to the Store's SNAP authorization.

1

## PARTIES

2. Plaintiff Best Crabs is a Maryland Limited Liability Company with its principal place of business in this judicial district. Plaintiff Best Crabs operates a retail food store that predominantly sells live crabs, raw shrimp, and other seafood products at its location in the deeply impoverished Carrollton Ridge neighborhood in Baltimore City.

3. Best Crabs is a "Retail Food Store" as such term is defined in 7 C.F.R. §271.2.

4. Defendant United States of America is the federal government.

5. Defendant USDA is an executive branch department of the federal government.

6. FNS is an agency of the United States Department of Agriculture ("USDA").

7. FNS administers and has promulgated regulations governing the SNAP pursuant to powers delegated by Congress in Section 4 of the Food and Nutrition Act of 2008. 7 U.S.C. §2013.

8. FNS is subject to the requirements of the FOIA.

9. FNS has an office or branch that processes FOIA Requests and FOIA Appeals. That office or branch is led by FNS's FOIA Official, who is a career civil servant.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this *de novo* judicial review action of FNS's FAD pursuant to 7 U.S.C. §2023, 7 C.F.R. §279.7, and 28 U.S.C. §§1331, 1346. This Court has also subject matter jurisdiction over this action pursuant to 5 U.S.C. §552(a).

11. This Court has personal jurisdiction over the parties pursuant to 7 U.S.C. §2023 and 5 U.S.C. §552(a).

12. This Court has jurisdiction to grant declaratory and further necessary and proper relief pursuant to Federal Rules of Civil Procedure 57 and 65.

13. Venue in this district is proper under 7 U.S.C. §2023 and 28 U.S.C. §§1391(b) and (e) because Best Crabs, the retail food store that is the subject of this action, is located in Maryland within this judicial district and division. Venue is also proper because the United States of America is deemed a resident of this judicial district and has consented to suit in this judicial district in SNAP judicial review proceedings. 7 U.S.C. §2023(a)(13). Venue is also proper in this judicial district pursuant to 5 U.S.C. §552(a)(4)(B).

14. Best Crabs has exhausted any and all administrative remedies required prior to the institution of this action.

## **The Freedom of Information Act**

15. The FOIA is a federal statute passed by Congress in 1966.

16. The FOIA provides that any person has a right, enforceable in court, to obtain access to federal agency records. The FOIA established a statutory right of public access to Executive Branch information in the federal government.

17. The United States Supreme Court has explained that the "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." The FOIA is a means for citizens to know what their Government is up to. The Supreme Court stressed that this phrase should not be dismissed as a convenient formalism; rather it, defines a structural necessity in a real democracy. The FOIA encourages accountability through transparency.

18. In connection with FOIA Requests and FOIA Appeals, FNS is required to follow the statute, USDA regulations (which are codified in Part 1 of Title 7 of the Code of Federal

Regulations), as well as its own agency regulations (which are codified in Part 295 of Title 7 of the Code of Federal Regulations).

## SNAP

19. Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 40 million Americans and more than 625,000 Marylanders. More than 25% of households in Baltimore City participate in SNAP.

20. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. §2011.

21. Pursuant to SNAP regulations set forth in Part 278 of Title 7 of the Code of Federal Regulations, FNS has authority to authorize and disqualify retail food stores from participation in SNAP.

## FACTUAL ALLEGATIONS

22. Best Crabs is a retail food store that specializes in live Maryland blue crabs and other seafood items.

23. Best Crabs opened for business in 1972 and received its SNAP (formerly the food stamp program) authorization shortly thereafter.

24. At all times relevant hereto, Best Crabs is and has been authorized by FNS to participate in SNAP as an authorized retailer.

25. At all times relevant hereto, Best Crabs has trained its employees regarding SNAP in accordance with FNS requirements.

26. At all times relevant hereto, Best Crabs properly supervised its employees, including regarding SNAP transactions and program requirements.

27. The overwhelming majority of gross receipts at Best Crabs are from the sale of SNAP-eligible staple food items.

28. On February 22, 2018, FNS sent a letter to Best Crabs requesting that it complete FNS Form 252-R as part of the SNAP retailer reauthorization process.

29. On or about March 2, 2018, Best Crabs responded to the February 22, 2018, FNS letter and submitted its completed FNS Form 252-R, as well as the most recent federal and state tax return of its managing member.

30. On March 9, 2018, FNS sent a follow-up letter to Best Crabs requesting certain additional records as part of the SNAP retailer reauthorization process ("Request for Records").

31. The Request for Records requested "verification of total gross retail sales for the last 3 months," "verification of actual gross retail sales for the last 3 months," and an "affidavit stating that any handwritten receipts submitted are an accurate reflection of actual gross retail sales."

32. Shortly after Best Crabs received the March 9, 2018, letter, its Manager Member spoke with FNS Program Specialist Jemall Pittman. Mr. Pittman advised that another letter would be forthcoming shortly and that Best Crabs could disregard the March 9, 2018, letter.

33. Notwithstanding Best Crabs' response to the Request for Records, on March 26, 2018, FNS issued a letter to Best Crabs advising that its authorization was being withdrawn and would be "effective 10 days from receipt of this letter unless you immediately provide the required information to the Food and Nutrition Service …"

34. On or about April 4, 2018, Best Crabs responded to the March 26, 2018, letter from FNS. Best Crabs' response contained all of the additional documentation requested by FNS in the Request for Records.

35. Best Crabs' response to the Request for Records included, *inter alia,* a detailed spreadsheet setting forth sales during the requested three-month period, segregated by the following methods of payment: Electronic Benefit Transfer ("EBT"), bank card, and cash.

36. On April 17, 2018, FNS issued another letter requesting (1) "verification of total gross retail sales for the last 3 months;" (2) "verification of actual gross retail sales for the last 3 months;" (3) a summary of actual gross retail sales, separated into categories for prepared/heated foods, non-foods, accessory foods, staple foods, and charges for food heating services; and (4) supply and inventory records

37. On or about April 27, 2018, Best Crabs timely responded to FNS's April 17, 2018, letter. Best Crabs' response to the April 17, 2018, letter contained the additional documentation requested by FNS.

38. On April 30, 2018, FNS issued another letter withdrawing Best Crabs' SNAP authorization, again noting that its SNAP authorization "will be withdrawn" and "will be effective 10 days from the date of receipt . . . unless you immediately provide the required information to the Food and Nutrition Service."

39. On May 3, 2019, notwithstanding Best Crabs' responses to its prior correspondence, FNS issued yet another letter requesting similar information from Best Crabs. The May 3, 2018, letter requesting (1) "three weeks of actual cash register sales receipts or guest checks at your firm for the dates of April 8, 2018 through April 29, 2018"; (2) "three months of

Supply and Inventory Records"; and (3) a "Sales Overview for the period of April 8, 2018, through April 28, 2018."

40. On May 8, 2018, Best Crabs submitted a request for records to FNS pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 et seq. ("May 8 FOIA Request"). The same day, FNS's FOIA Office sent a letter acknowledging receipt and setting a target date of June 6, 2018, for FNS's response thereto.

41. On May 14, 2018, via e-mail, FNS Section Chief Batisa Edwards confirmed that Best Crabs' SNAP authorization had not been withdrawn, that FNS's withdrawal letters had been superseded by more recent correspondence (including the May 3, 2018, letter), and that the deadline for submission of the Store's response to the May 3, 2018, letter had been extended to May 23, 2018.

42. On May 23, 2018, Best Crabs submitted its written response to FNS's May 3, 2018, letter. In its response, Best Crabs produced copies of all guest checks and all invoices in its possession, reflecting tens of thousands of dollars in purchases and sales, for the requested period of time.

43. Best Crabs' response to FNS's May 3, 2018, letter noted that did not maintain copies of sales register receipts on a routine basis because no federal or state law or regulation directed or required SNAP retailers to maintain sales register receipts.

44. No regulation promulgated by FNS requires SNAP retailers to maintain register receipts.

45. Best Crabs' response to FNS's May 3, 2018, letter also noted that it did not utilize a sophisticated point-of-sale (POS) system similar to the type used at large retailers.

46. Best Crabs' register receipts and guest tickets provide no indication regarding whether the customer intends to eat the food at home or at another location.

47. Best Crabs' response to FNS's May 3, 2018, letter provided the dollar-value of sales in the five requested categories: heated/prepared foods, non-foods, accessory foods, staple foods, and heating charges.

48. More than 55% of the gross receipts at Best Crabs during the three week period set forth in the May 3, 2018, letter reflected sales of foods that were neither cooked nor heated nor were prepared foods.

49. On May 21, 2018, and June 5, 2018, FNS's FOIA Office sent a letter with an estimated fee due from Best Crabs related to the May 8 FOIA Request.

50. On June 5, 2018, Best Crabs, via counsel, confirmed its willingness to pay the estimated fee and requested prompt production of all responsive records.

51. On July 19, 2018, more than a month after FNS's target response date, FNS sent correspondence, but no responsive records, related to the May 8 FOIA Request.

52. On July 23, 2018, Jennifer Weatherly, FNS's then-FOIA Chief, advised that its July 19, 2018 correspondence should be "disregarded."

53. On July 24, 2018, Ms. Weatherly requested "clarification" on items 4-7 of the May 8 FOIA Request.

54. On July 28, 2018, counsel for Best Crabs responded to the July 24, 2018, Request for Clarification from FNS's FOIA Office.

55. On August 1, 2018, counsel for Best Crabs sent an email to Ms. Weatherly inquiring as to when FNS's response to the May 8 FOIA Request would be forthcoming.

56. On August 29, 2018, FNS's FOIA Office finally responded, advising that the agency was "continuing our search for records pertaining to items (4), (5), (6), and (7), however in the meantime we will provide a partial response."

57. On September 20, 2018, FNS sent another letter relating to Best Crabs' SNAP reauthorization requesting:

> written description explaining how the guest checks were used in your sales calculation process. What practices and procedures were used to distinguish the sales categories in order to calculate and record all sales by the firm. For example, what is the identifier used by all cashers to indicate hot food and/or prepared are [sic] foods (heated by your firm before or after purchase).

58. The September 20, 2018, letter also claimed that "[t]he guest checks you submitted do not provide adequate information to recreate and confirm the reported sales. This is our final attempt to obtain the necessary information required to evaluate your firm's continued eligibility for SNAP."

59. On October 1, 2018, Best Crabs responded to FNS's September 20, 2018, letter. Best Crabs' response to the September 20, 2018, letter provided a detailed description of its guest checks and detailed the methodology used by Best Crabs' managing member to categorize each item on each guest check into the categories requested by FNS.

60. Best Crabs' response to the September 20, 2018, letter noted that FNS has no authority under its regulations to withdraw the authorization of a SNAP retailer unless evidence exists that establishes that a majority of a retailer's gross sales exceeds the sum of (1) foods cooked or heated on-site by the retailer before or after purchase; and (2) hot or cold prepared food not intended for home preparation or consumption.

61. Best Crabs' response to the September 20, 2018, letter stated, *inter alia,* that FNS has never required SNAP retailers to use sophisticated point-of-sale equipment that provide a high level of detail on each register receipt, that FNS was improperly shifting the burden of proof onto

9

retailers to show that they were not a restaurant, and that any agency decision that imposes a *de facto* requirement of providing detailed register receipts as a condition of authorization without going through the notice and comment rulemaking process would violate the Administrative Procedure Act.

62. On November 8, 2018, FNS issued a letter advising Best Crabs that its SNAP authorization was being withdrawn ("Withdrawal Letter"). The Withdrawal Letter provided only that "[t]he information you submitted was inadequate (i.e. unclear or incomplete)" and that "FNS found the documentation provided was not sufficient to determine the firm's eligibility."

63. On November 13, 2018, Best Crabs timely submitted its request for administrative review of FNS's November 8, 2018, withdrawal of its SNAP authorization, pursuant to 7 C.F.R. Part 279.

64. On November 21, 2018, Best Crabs submitted another FOIA Request to FNS ("November 21 FOIA Request"). A copy of the November 21 FOIA Request is attached hereto as Exhibit A.

65. On December 17, 2018, Best Crabs, via counsel, inquired as to the status of FNS's response to the November 21 FOIA Request. A copy of the November 21, FOIA Request was attached to Best Crabs' inquiry to FNS's FOIA Office, which was sent via e-mail.

66. On January 31, 2018, FNS provided a "partial response" to the May 8 FOIA Request. FNS asserted FOIA Exemptions 5, 6, 7(C), and 7(E) as grounds for withholding responsive records.

67. On February 6, 2019, Best Crabs, via counsel, sent another e-mail to FNS's FOIA Office inquiring as to the status of FNS's response to the November 21 FOIA Request.

68. On February 26, 2019, FNS Administrative Review Branch Officer ("ARO") Monique Brooks advised that FNS's response to the May 8 FOIA Request was final.

69. On March 22, 2019, Best Crabs submitted its response in support of its Request for Administrative Review.

70. On or about April 4, 2019, ARO Brooks issued FNS's Final Agency Decision ("FAD"). A copy of the FAD is attached hereto as Exhibit B.

71. Despite its issuance of the FAD, FNS did not send it on April 4 to Best Crabs or its counsel.

72. On April 8, 2019, ARO Brooks finally sent a copy of the FAD via United Parcel Service to Best Crabs for delivery on April 12, 2019.

73. On April 8, 2019, ARO Brooks also sent a copy of the FAD via United Parcel Service to counsel for Best Crabs for delivery on April 12, 2019, at counsel's prior address. ARO Brooks had personal knowledge of Best Crabs' counsel's correct mailing address.

74. On April 12, 2019, Best Crabs received a copy of the FAD for the first time.

75. On April 16, 2019, Best Crabs again inquired as to the status of FNS's response to the November 21 FOIA Request.

76. On April 17, 2019, Best Crabs submitted its administrative appeal of FNS's response to the May 8 FOIA Request ("FOIA Appeal").

77. On April 18, 2019, FNS sent an electronic copy of the FAD to Best Crabs' counsel.

78. On April 19, 2019, via letter, FNS's FOIA Office acknowledged receipt of Best Crabs' FOIA Appeal and assigned it tracking number 2019-FNS-00275-A ("Acknowledgement Letter").

79. FNS's Acknowledgement Letter noted that the agency has "twenty working days to respond to timely appeals after receipt by appropriate office." FNS's deadline to respond to the FOIA Appeal is May 15, 2019.

80. On April 22, 2018, Best Crabs' counsel finally received a hard copy of the FAD.

81. In its FAD, FNS advised that it withdrew Best Crabs' SNAP authorization because it allegedly "failed to cooperate with repeated attempts to obtain necessary information for Retailer Operations Division to make its determination." *Id.* at 5.

82. In its FAD, FNS concluded that Best Crabs "admitted that its register receipts do not contain information which would permit FNS to determine whether one or more of the items listed on each register receipt were sold hot or whether the customer intended to consume the products at home or another location." *Id.*

83. The FAD was also based upon Best Crabs' alleged refusal or failure to "comply with the requests, by changing its practice of sales record keeping." *Id.*

84. FNS withdrew Best Crabs' SNAP authorization because "it cannot be adequately determined what items were purchased and whether they were sold fresh or in a prepared state either before or after purchase." *Id.* at 6.

85. FNS noted that "[a]lthough Appellant may be familiar with the handwriting of its clerks, it is important that the firm provide clear and complete documentation that can be understood by reviewers, in order for FNS to adequately determine the firms [sic] eligibility." *Id.*

### COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION
### PURSUANT TO 7 U.S.C. §2023 AND 7 C.F.R. §279

86. Plaintiff Best Crabs repeats and re-alleges paragraphs 1 through 85 as if fully set forth herein.

87. At all times relevant hereto, a majority of Best Crabs' gross receipts were of staple food items that were neither cooked nor heated on-site (pre-sale or post-sale) nor were prepared foods.

88. The guest checks submitted by Best Crabs in response to FNS's letters established that a majority of its gross receipts were neither cooked nor heated on-site (pre-sale or post-sale) nor were prepared foods.

89. The declaration of Leo Devine established that a majority of Best Crabs' gross receipts during the period requested by FNS were of staple food items that were neither cooked nor heated on-site (pre-sale or post-sale) nor were prepared foods.

90. At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts from SNAP transactions.

91. At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts from non-SNAP transactions.

92. At no time has FNS promulgated a formal policy memorandum that requires SNAP-authorized retailers to keep register receipts from SNAP transactions.

93. At no time has FNS promulgated a formal policy memorandum that requires SNAP-authorized retailers to keep register receipts from non-SNAP transactions.

94. At no time has FNS notified SNAP retailers individually that it amended its SNAP Retailer Training Guide during January 2018.

95. FNS's SNAP Retailer Training Guide does not provide any specificity regarding the type of point-of-sale system that SNAP retailers should utilize.

96. FNS's SNAP Retailer Training Guide does not provide any specificity regarding the type of register receipts that SNAP retailers should utilize.

97. FNS's SNAP Retailer Training Guide does not provide any specificity regarding the type of register receipts that SNAP retailers should maintain.

98. FNS's SNAP Retailer Training Guide does not provide any specificity regarding the information that should be provided on register receipts given to customers.

99. FNS's SNAP Retailer Training Guide does not provide any specificity regarding the information that should be provided on register receipts that SNAP retailers should maintain.

100. At no time has FNS published a notice or other alert advising SNAP retailers that it amended its SNAP Retailer Training Guide during January 2018.

101. At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts that provide detail regarding foods cooked or heated on-site.

102. At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts that provide detail regarding foods cooked or heated on-site, pre-sale.

103. At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts that provide detail regarding foods cooked or heated on-site, post-sale.

104. At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to install a point-of-sale system to process SNAP transactions.

105. At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to install a sophisticated point-of-sale system similar to those used by many large retailers, including most SNAP-authorized superstores.

106. FNS is not aware of a point-of-sale system in use by SNAP retailers that differentiates between foods cooked or heated on-site and off-site.

107. FNS is not aware of a point-of-sale system in use by SNAP retailers that differentiates between foods cooked or heated pre-sale and post-sale.

108. FNS did not have a proper basis for withdrawing Best Crabs' SNAP authorization.

109. A preponderance of the evidence that FNS considered in issuing the FAD did not support its decision to withdraw Best Crabs' SNAP authorization.

110. FNS improperly shifted the burden of proof to Best Crabs to disprove that it is a restaurant in violation of the Food and Nutrition Act and FNS's SNAP regulations.

111. FNS's decision to withdraw Best Crabs' SNAP authorization was invalid, unreasonable, arbitrary and capricious, and unsupported by the administrative record and all other evidence available to it.

112. FNS's decision to withdraw Best Crabs' SNAP authorization should be reversed because FNS failed to consider all evidence submitted by the Store.

113. FNS's decision to withdraw Best Crabs' SNAP authorization should be reversed because FNS failed to consider the detailed information submitted in support of its request for administrative review, including the additional guest checks provided by Best Crabs in support of its request for administrative review and the description of how Best Crabs categorized the guest checks into the categories requested by FNS.

114. FNS's withdrawal of Best Crabs' SNAP authorization was not rationally related to any legitimate governmental interest.

115. FNS's withdrawal of Best Crabs' SNAP authorization is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

116. FNS's withdrawal of Best Crabs' SNAP authorization represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

117. FNS, in issuing the FAD, relied upon records and other information in FNS's possession which were never provided to Best Crabs despite requesting all such records in its FOIA Requests.

118. The FAD was not based upon any declarations or affidavits from a USDA or FNS official, employee, or contractor whose identity was disclosed to Best Crabs.

119. The FAD is FNS's final administrative determination related to the withdrawal of Best Crabs' SNAP authorization.

120. The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§2023(a)(13), (15).

121. Judicial reviews pursuant to 7 U.S.C. §§2023(a) are not governed by the Administrative Procedure Act and the evidence is not limited to the administrative record prepared by FNS.

122. The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

123. FNS withdrew Best Crabs' SNAP authorization in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

124. FNS's withdrawal of Best Crabs' SNAP authorization was premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. §278.1.

125. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Best Crabs.

126. Plaintiff Best Crab respectfully requests a *de novo* review of FNS's FAD which affirmed the withdrawal of its SNAP authorization.

WHEREFORE, Plaintiff Best Crabs respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a) Reversing the FAD;

(b) Vacating FNS's Initial Determination;

(c) Preliminarily enjoining FNS from withdrawing Best Crabs' authorization to participate in SNAP during the pendency of this action;

(d) Permanently enjoining FNS from withdrawing Best Crabs' authorization to participate in SNAP based upon the Initial Determination and/or the FAD;

(e) Awarding Best Crabs an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(f) Such other and further relief as the Court may deem just and proper.


**COUNT II – VIOLATION OF THE FREEDOM OF
INFORMATION ACT AGAINST DEFENDANT USDA**

109. Plaintiff repeats and re-alleges paragraphs 1 through 85 as if fully set forth herein.

110. On November 21, 2018, Best Crabs sent the FOIA Request to FNS requesting, *inter alia,* records in the agency's possession relating to its SNAP authorization, FNS's Initial Determination, and to certain FNS SNAP policies. *See* Exhibit A.

111. Pursuant to the FOIA, FNS is required to provide a response within twenty (20) working days.

112. Despite the passage of more than five months since receipt of the November 21 FOIA request and a multitude of inquiries from Best Crabs regarding the status of FNS's response, FNS still has not provided any responsive records or asserted that any responsive records are exempt from production.

113. FNS failed to respond the November 21 FOIA Request, notwithstanding the passage of more than twenty (20) working days since submission thereof.

114. Based on FNS's failure to timely respond to the FOIA Request, Best Crabs has exhausted all applicable administrative remedies with respect to the November 21 FOIA Request prior to seeking judicial review thereof.

115. FNS has wrongfully withheld records requested by Best Crabs in violation of the FOIA by failing to timely search for and produce all responsive records.

116. FNS has a policy and practice of failure to comply with the time requirements set forth in FOIA, especially in response to FOIA Requests submitted by SNAP-authorized retailers.

117. While FNS lists target dates in its acknowledgement letters sent in response to FOIA Requests, which dates are designed to comply with the mandatory time requirements in the FOIA, the agency fails to timely comply with its listed target dates a majority of the time when responding to FOIA Requests are submitted by SNAP retailers.  At no time did FNS send an acknowledgement letter in response to the November 21 FOIA Request.

118. FNS underfunds its FOIA Office, which has effect of preventing the public from discovering what the agency is up to.

119. FNS intentionally underfunds its FOIA Office in order to prevent the public from discovering what the agency is up to.

120. FNS fails to comply with the mandatory time requirements in the FOIA, which has the effect of preventing the public from discovering what the agency is up to.

121. FNS intentionally fails to comply with the mandatory time requirements in the FOIA in order to prevent the public from discovering what the agency is up to.

122. FNS has violated the FOIA by failing to timely respond to the November 21 FOIA Request.

123. By failing to timely respond to the November 21 FOIA Request, FNS has waived all exemptions it might have been able to assert had it timely responded to the FOIA Request.

124. By failing to timely respond to the November 21 FOIA Request, FNS has waived any right to collection of any fees from Best Crabs that it might have been entitled to had it timely responded to the FOIA Request.

125. This cause of action was necessary in order to compel FNS to comply with the November 21 FOIA Request.

WHEREFORE, Plaintiff Best Crabs respectfully requests that this Court enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a) Declaring that FNS violated the FOIA by failing to timely respond to Plaintiff's FOIA Request;

(b) Declaring that FNS has a *de facto* policy of violating the FOIA by failing to timely respond to FOIA Requests from SNAP retailers;

(c) Declaring that FNS's action establish a pattern and/or practice of violating the FOIA by failing to timely respond to FOIA Requests from SNAP retailers;

(d) Declaring that Best Crabs substantially prevailed on this count based on FNS's violation of the FOIA;

(e) Ordering FNS to produce all responsive records in full and without permitting it to assert any exemptions;

(f) Ordering FNS to produce all responsive records in full and without requiring Best Crabs to pay a fee;

(g) Ordering FNS to conduct a comprehensive search for all responsive records, including e-mails;

(h) Awarding Best Crabs an amount equal to its reasonable attorneys' fees and costs, including pursuant to the FOIA and the Equal Access to Justice Act; and

(i) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 24th day of April 2019.

By: /s/ J. Mason Weeda
Joseph Mason Weeda (D. Md. Bar No. 18276)
Stewart D. Fried (*pro hac vice* application forthcoming)
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., # 3000
Washington, D.C. 20006
(202) 518-6326 – Direct Dial
(202) 234-3550 – Facsimile
sfried@ofwlaw.com

Attorneys for Plaintiff Always Cooking Best Crabs, LLC