**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ALWAYS COOKING BEST CRABS, LLC,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil No. 19-1203-DKC |
| **UNITED STATES, et al.,** | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION
TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

The United States of America, by its counsel and on behalf of the United States Department of Agriculture ("USDA"), submits this memorandum of law in support of its Motion to Dismiss or in the Alternative for Summary Judgment.[1]

## INTRODUCTION

This lawsuit stems from FNS's decision to withdraw Best Crabs's authorization to participate in its SNAP program (formerly known as the Food Stamp Program). To qualify to participate in SNAP, a food retailer must establish (initially, and then through periodic reauthorization) that less than 50% of its revenue is derived from cooked, heated, or prepared foods. Starting in February 2018, during FNS's review of Best Crabs's authorization, FNS requested from Best Crabs documents and information sufficient to allow FNS to independently determine whether Best Crabs derived 50% or less of its revenue from cooked, heated, or prepared foods. After providing Best Crabs with multiple opportunities and clarifications, FNS ultimately withdrew Best Crabs's SNAP authorization because it could not independently determine from

---

[1] The United States, not USDA, is the proper defendant in this case. 7 U.S.C. § 2023(a)(13); *see Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010).

1

Best Crabs's documents whether it was deriving revenue from appropriate and qualified sources. Best Crabs's lawsuit aims to overturn FNS's decision, but it should be rejected because Best Crabs cannot meet its burden of establishing that FNS's decision was incorrect. Provided only with Best Crabs's admissions that it did not have the requisite information and incomprehensible records, FNS correctly decided that it did not have enough information to determine whether Best Crabs derived 50% of its revenue from qualified sources.

The second part of Best Crabs's complaint stems from two FOIA requests by Best Crabs relating to its SNAP reauthorization with FNS. During its reauthorization process, Best Crabs submitted a FOIA request seeking seven broad categories of documents, including documents relating to its SNAP reauthorization, FNS's rule-making process, and FNS's handling of other retailers' SNAP authorizations in Maryland, Virginia, Delaware, and the District of Columbia. FNS produced documents relating to Best Crabs's own reauthorization process, but properly withheld documents about its internal rule-making and other SNAP authorizations unrelated to Best Crabs. Best Crabs's lawsuit challenges FNS's decision to withhold these documents pursuant to FOIA. Best Crabs's FOIA claims should be rejected because its requests were unreasonable in scope. As such, FNS was not obligated to provide a response or produce documents. Best Crabs's second FOIA count relates to its second FOIA request made in November 2018. Best Crabs alleges that FNS never responded to this request, but in fact FNS did respond and produce documents, meaning this claim must fail.

Best Crabs's final claim asserts that FNS has a policy or practice of intentionally refusing to comply with FOIA deadlines. The Court should dismiss this claim, or grant judgment for Defendants as a matter of law, because there is no evidence to support this claim, and FNS has provided uncontroverted evidence to the contrary, establishing that it does not have a policy or

practice of intentionally missing FOIA deadlines. The Court should dismiss all of Plaintiff's claims or enter judgment for Defendants as a matter of law.

## FACTUAL AND LEGAL BACKGROUND

### I. BEST CRABS'S SNAP CLAIM

#### A. Statutory Background

"SNAP is designed to promote the general welfare and to safeguard the health and well being of the Nation's population by raising the levels of nutrition among low-income households." 7 C.F.R. § 271.1(a) (citing Section 2 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2023). The USDA, through its agency FNS, administers the SNAP program. *See id.* § 271.3(a). FNS allows food stores to participate in SNAP to directly provide low-income households with nutritious foods. *See id.* § 278.1(a).

There are, however, conditions to a store's participation in SNAP. To be authorized to participate in SNAP, a store "shall file an application as prescribed by FNS." *Id.* Critical to this case, applicants cannot qualify for SNAP if they "have more than 50 percent of their total gross sales in foods cooked or heated on-site by the retailer before or after purchase; and hot and/or cold foods not intended for home preparation or consumption, including prepared foods that are consumed on the premises or sold for carryout." *Id.* § 278.1(b)(1)(iv).

Also critical to this case are regulations requiring SNAP applicants to provide information for FNS to independently determine whether the applicant qualifies for SNAP participation. SNAP regulations state that applications "shall contain information which will permit a determination to be made as to whether an applicant qualifies, or continues to qualify, for authorization under the provisions of the program." *Id.* § 278.1(b). Applicants must "provide sufficient data and information on the nature and scope of the firm's business for FNS to determine

whether the applicant's participation will further the purposes of the program" and must on request "provide documentation to FNS to verify information on the application." *Id.* § 278.1(b). Applicants must further "obtain corroborating documentation from other sources as deemed necessary to ensure the legitimacy of applicant firms, as well as the accuracy of information provided by the stores." *Id.* Applicants who do not provide the information requested or needed to establish eligibility, and applicants who do not qualify for SNAP based on information provided in the application, are not permitted to participate in the SNAP program. *See id.* §§ 278.1(b), (b)(1)(iv).

### B.   Withdrawal of Best Crabs's SNAP authorization

Best Crabs opened for business in 1972 and received its SNAP / food stamp authorization shortly thereafter.  ECF No. 12, Am. Compl. ¶ 23.  Consistent with the process outlined above, on February 22, 2018, FNS sent a letter to Best Crabs requesting information necessary to determine whether Best Crabs remained SNAP eligible.  Am. Compl. ¶ 28; *see* A.R. 1995-96.[2]  This letter indicated that failure to submit the requested information with 10 days "may result in withdrawal of [Best Crabs's] authorization to accept SNAP benefits."  A.R. at 1996.  Best Crabs alleges that it responded to FNS on March 2, 2018 and provided a required form and tax returns of its managing member.  Am. Compl. ¶ 29.

On March 9, 2018, FNS sent another letter to Best Crabs, requesting additional information to confirm Best Crabs's SNAP eligibility and again warning that failure to provide the requested information may result in withdrawal from the program.  Am. Compl. ¶ 30; *see* A.R. 2008-09. More specifically, FNS indicated in the March 9, 2018 letter that it appeared as though Best Crabs was "operating primarily as a restaurant, in that more than 50 percent of your total gross retail

---

[2]  Citations to "A.R." refer to the SNAP Administrative Record, produced at ECF No. 17-2.

sales are hot food (heated by your firm before or after purchase) and/or cold prepared foods." *See* A.R. at 2008; *see* Am. Compl. ¶ 30. FNS requested from Best Crabs: (1) verification of total gross retail sales for the last 3 months (sales tax records, income tax records, or other records verifying total gross retail sales income); (2) verification of actual gross retail sales for the last 3 months (actual sales receipts, etc.); and (3) a notarized affidavit stating that any handwritten receipts submitted are an accurate reflection of actual gross retail sales. A.R. at 2008.

Best Crabs provided additional information to FNS on or about April 4, 2018 and included additional documentation requested by FNS. Am. Compl. ¶ 34. Included in this submission, Best Crabs admitted, in response to the request that it provide exact sales amounts, that "exact figures are unknown." *See* A.R. at 89. Not satisfied with Best Crabs's response and documentation, FNS sent on April 17, 2018 another letter to Best Crabs to re-iterate and clarify what Best Crabs needed to send to maintain SNAP eligibility. Am. Compl. ¶ 36; *see* A.R. at 2010-11. FNS made clear that it needed:

- Verification of total gross retail sales for the last 3 months (Maryland's sales and use tax filings, income tax records, or other records verifying total gross retail sales income);

- Verification of actual gross retail sales for the last 3 months (actual customer sales transaction, etc.). (Previous submission did not provide what was requested. Therefore, this statement was rewritten to add clarity);

- A summary of actual gross retail sales for the last 3 months (for example, including total dollar amount of gross retail sales, separated in the following categories: 1) heated or prepared foods, 2) non-foods, 3) accessory foods, 4) staple foods, and 5) charges for food heating services.

- Supply and inventory records (purchase orders, delivery receipts for suppliers / wholesalers, inventory logs, etc.).

A.R. at 2010. In its April 27, 2018 response, Best Crabs again admitted that the amount of gross retail sales that were (1) heated or prepared foods, (2) non-foods, (3) accessory foods, and (4) staple foods were "unknown" to Best Crabs. *See* A.R at 112.

FNS wrote another letter on May 3, 2018 to Best Crabs, providing Best Crabs with another opportunity to establish that it was not a non-compliant "restaurant." *See* A.R. 2014-15. FNS requested the following information, even clarifying where specifically Best Crabs had erred with its previous submissions:

- Three weeks of actual cash register sales receipts or guest checks for all sales transactions at your firm for the dates of April 8, 2018 through April 28, 2018. These receipts should have the date, items sold, price of item, sales tax, and the total. If you are providing guest checks you must include a notarized affidavit attesting to the accuracy of the receipts provided.

- Three months of Supply and Inventory Records – Previously requested on April 17, 2018, but not provided. These records include purchase orders, bills of lading, inventory logs, and any other records that demonstrate the firm's total supply and inventory over the *[sic]* for the past three months (February 2018 through April 2018). Previously you stated you do not have a bill of lading or inventory logs so please provide all invoices for the timeframe specified.

- A Sales Overview for the period of April 8, 2018 through April 28, 2018. Your documentation of actual sales should also include an overview of the sales figures for the full three-week period, which indicates which shares of the firm's sales are from heated or prepared foods, non-foods, accessory foods, staple foods, and charges for food heating services. The previous sale information you provided listed sales by payment method and not the required categories. We are not asking for payment methods nor for your bank records showing deposits, we need a sales summary by the specific product type – foods heated onsite, cold prepared foods, non-food, accessory foods such as chips and snacks, staple food.

*Id.* at 2014. FNS told Best Crabs that the May 3, 2018 letter was its "final attempt to obtain the necessary information required to evaluate your business." *Id.*

After FNS agreed to extend Best Crabs's deadline to respond, on May 23, 2018, Best Crabs submitted a written response along with guest checks and invoices for the requested period of time. Am. Compl. ¶ 42; A.R. at 2023-2118. In its written response, Best Crabs acknowledged that it did not maintain copies of sales register receipts on a routine basis, it did not use a sophisticated point-of-sale system, and its register receipts and guest tickets provide no indication of whether the customer intends to eat the food at home or another location. Am. Compl. ¶¶ 43-46.

Although Best Crabs "declared" that more than 55% of its gross receipts reflected sales of foods that were not cooked, heated, or prepared foods, FNS could not confirm this declaration with the information provided, so it sent another letter to Best Crabs on September 20, 2018, providing Best Crabs with yet another chance to provide the information needed. *See* A.R. at 2118-19. FNS made clear that it could not "make an authorization determination based upon the information you provided" and requested "a written description explaining how the guest checks were used in your sales calculation process." *Id.* at 2118. FNS further requested that Best Crabs clarify "what practices and procedures were used to distinguish the sales categories in order to calculate and record all sales by the firm. For example, what is the identifier used by all cashiers to indicate hot food and/or prepared [sic] are foods (heated by your firm before or after purchase)." *Id.* FNS noted that the "guest checks you submitted do not provide adequate information to recreate and confirm the reported sales." *Id.*

Best Crabs responded to FNS on October 1, 2018. Am. Compl. ¶ 59; A.R. at 2119-2121. Describing the "methodology" it used to distinguish between cooked, heated, or prepared foods and all other types of foods, Best Crabs stated that it maintains cooked/heated/prepared food receipts "in a separate pile until the end of each work day" but "does not differentiate on its register receipts between items that are cooked or heated post-sale." A.R. at 2020. Best Crabs only referred to a previously submitted statement of Mr. Devine, and provided no other evidence, to support its calculations of the types of food sales of Best Crabs. Best Crabs asserted that Mr. Devine personally "reviewed each of the guest checks during the three week period" and "tabulated the sales amount of each item on each guest check in one of the sales categories requested by FNS." *Id.* Mr. Devine, and Mr. Devine alone, was apparently able to segregate the food receipts into different categories because he "is intimately familiar with the items sold at Best Crabs and

the handwriting of his clerks" and he "personally determined whether each item was an eligible food item." *Id.* In other words, there is no independent way for FNS (or anyone other than Mr. Devine) to determine the amount of revenue generated by Best Crabs for each type of food it sells. *See id.* In fact, Best Crabs admitted in this letter that its "cashiers do not use an identifier to indicate whether eligible food items are hot or prepared foods." *Id.*

On November 8, 2018, after providing Best Crabs with multiple opportunities to submit evidence from which it could determine Best Crabs's SNAP eligibility, FNS notified Best Crabs that its authorization to participate in SNAP was being withdrawn. *See* Am. Compl. ¶ 62; *see* A.R. at 2127-28. After Best Crabs submitted a request for administrative review, on or about April 4, 2019, FNS issued its Final Agency Decision. Am. Compl. ¶ 70; A.R. at 2217-24. The Final Agency Decision explained that Best Crabs's SNAP authorization was withdrawn for its "failure to cooperate with repeated attempts to obtain necessary information for Retailer Operations Division to make its determination" and that "as a result of the store's failure to cooperate, Retailer Operations Division was unable to make a determination regarding Appellant's eligibility." A.R. at 2223. The Final Agency decision noted that Best Crabs "admitted that its register receipts do not contain information which would permit FNS to determine whether one or more of the items listed on each register receipt were sold hot or whether the customer intended to consume the products at home or another location." *Id.* at 2222. Given the "elapsed time and number of attempts to obtain adequate records," FNS found that Best Crabs "had an opportunity to comply with the requests, by changing its practice of sales record keeping, but either refused or failed to do so." *Id.* In sum, Best Crabs's business practices precluded FNS from engaging in a meaningful review of its SNAP authorization, leading FNS to withdraw the authorization. *See id.* at 2222-23.

## II. BEST CRABS'S FOIA CLAIMS

### A. Statutory Background

FOIA provides a means for the public to access federal government records, subject to certain exemptions. 5 U.S.C. § 552. Generally, an agency must determine within twenty days after receipt of a properly submitted FOIA request, or thirty days in "unusual circumstances," "whether to comply with such request." *Id*. §§ 552(a)(6)(A)(i), (B)(i). FOIA directs that, if an agency fails to make a determination within twenty days, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request," allowing the requestor to file a lawsuit to obtain the requested records. *Id*. § 552(a)(6)(C)(i); *see also id*. § 552(a)(4)(B). "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review" with respect to that particular request. *Id*. § 552(a)(6)(C)(i). The statute does not suggest any other consequences for an agency's failure to make a determination within twenty days. Rather, the twenty-day timeline—and an agency's failure to meet that timeline— sets forth a condition that must be met before a court may exercise or retain jurisdiction over the FOIA claim. *See Citizens for Responsibility & Ethics in Wash. v. Federal Election Comm'n* ("*CREW I*"), 711 F.3d 180, 189 (D.C. Cir. 2013).

### B. Best Crabs's FOIA Requests and FNS's Response

While FNS was in the midst of Best Crabs's SNAP reauthorization review, on May 8, 2018, Best Crabs submitted to FNS a request for records pursuant to FOIA. Am. Compl. ¶ 40; *see* ECF No. 12-1. Plaintiff's FOIA request sought a significant amount of documents and information, including all information relating to:

(1) its SNAP authorization or reauthorization;

(2)     FNS's correspondence with Best Crabs;

(3)     FNS site visits to Best Crabs;

(4)     FNS's December 8, 2016 Final Rule;

(5)     FNS correspondence with any SNAP retailer in Maryland, the District of Columbia, Virginia, or Delaware in connection with any authorization, re-authorization, withdrawal, or potential withdrawal of SNAP authorization starting on August 1, 2017;

(6)     FNS correspondence with any SNAP retailer in Maryland, D.C., Virginia, or Delaware wherein FNS found that the firm is primarily a restaurant; and

(7)     correspondence of six individuals regarding authorization, re-authorization, or withdrawal of any retailer because FNS believes that the firm is a restaurant.

ECF No. 10-1 at 1-2. The same day FNS received Best Crabs's request, it sent a letter to Best Crabs acknowledging receipt and setting a target production date of June 6, 2018. Am. Compl. ¶ 40. In response to a request from FNS, on June 5, 2018, Best Crabs confirmed its willingness to pay the estimated fee. *Id.* ¶ 50.

On July 24, 2018, FNS requested clarification on items 4-7 of Best Crabs's FOIA Request. *Id.* ¶ 53. On July 28, 2018, Best Crabs responded to the request for clarification. *Id.* ¶ 54. On August 1, 2018, Best Crabs sent an e-mail to FNS inquiring as to when FNS's response would be forthcoming. *Id.* ¶ 55. On August 29, 2018, FNS responded, advising that it was "continuing our search for records pertaining to items (4), (5), (6), and (7), however in the meantime we will provide a partial response." *Id.* ¶ 56. While in the midst of responding to Best Crabs's first FOIA request, on November 21, 2018, Best Crabs submitted another FOIA Request to FNS. *Id.* ¶ 64, *see* ECF No. 12-2. This request sought all information relating to FNS's November 8, 2018 decision to withdraw Best Crabs's SNAP authorization. *See* ECF No. 12-3.

On January 31, 2019, FNS responded to Best Crabs's first FOIA request and produced documents. *See id.* ¶ 66; *see* Ex. A. FNS provided documents and information responsive to Best

Crabs's requests 1, 2, and 3.[3]  *See* Ex. A.  FNS noted that it withheld approximately 13 pages of documents or pictures under 5 U.S.C. § 552(b)(5) and (b)(7)(e) because that "information may reveal our analysis and investigative techniques for reviewing suspicious Electronic Benefits Transfer (EBT) transactions at the risk of circumvention of law."  *Id.* at 7.  FNS further asserted that these documents were withheld under Exemption 5, which "permits the Government to withhold inter-agency or intra-agency memorandums or letters which would not be available by law to a party in litigation with the agency."  *Id.* at 7.

With respect to Best Crabs's requests 4-7, which related to FNS rule-making and FNS's handling of SNAP authorizations of retailers other than Best Crabs, FNS explained that it withheld responsive documents based on several exemptions.  *Id.* at 7.  FNS explained that it withheld all documents relating to requests 4-7 because Exemption 5 to FOIA "permits the Government to withhold from release certain inter-Agency and intra-Agency memoranda or communications which would disclose an Agency's deliberative process" and "protects pre-decisional documents regarding legal or policy matters."  *Id.* at 7-8.  FNS further provided Best Crabs a link showing policy memos relating to the final retailer enhancement rule, which covered Best Crabs's request number 4.  *Id.* at 8.  With respect to Best Crabs's requests for documents relating to FNS's treatment of other firms' SNAP authorizations, FNS informed Best Crabs that there are no responsive records, noting that "FNS is unable to perform system queries utilizing keywords, phrases, and/or regulatory citations, to locate correspondence to or from any SNAP authorized retailer."  *Id.*

On February 26, 2019, FNS advised Best Crabs that its response to the first FOIA request was complete.  Am. Compl. ¶¶ 68, 75; Exs. B, C.  FNS further advised that Best Crabs had that

---

[3]  The information produced by FNS, which included information relating to Best Crabs's SNAP authorization, also includes information requested in Best Crabs's second FOIA request.

right to submit a FOIA Appeal.  *Id.*  On April 17, 2019, Best Crabs submitted its administrative appeal of FNS's response to the first FOIA Request.  Am. Compl. ¶ 76.  On April 19, 2019, via letter, FNS's FOIA Office acknowledged receipt of Best Crabs' FOIA Appeal and assigned it tracking number 2019-FNS-00275-A.  *Id.* ¶ 78.

Days later, on April 29, 2019, FNS responded in writing to the second FOIA request.  *See* Ex. D.  FNS indicated that it located another 21 pages responsive to Best Crabs's request and produced those documents to Best Crabs's counsel.  *Id.*  FNS further indicated that Best Crabs could appeal FNS's response.  *Id.*  Best Crabs does not allege that it filed any such appeal.  *See* Am. Compl. ¶¶ 127-36.

C.    Best Crabs's FOIA Allegations

Best Crabs makes allegations specific to each of its FOIA requests, along with sweeping allegations that FNS has a "policy and practice" of failing to comply with FOIA guidelines.  With respect to Plaintiff's assertions about its FOIA requests, Count II of Plaintiff's Amended Complaint relates largely to its second FOIA request.  Best Crabs asserts that it sent a second FOIA request to FNS on November 21, 2018, that FNS first acknowledged receipt of the request on April 25, 2019, and that FNS never responded to this request.  Am. Compl. ¶¶ 128, 130, 132.  Count III of Plaintiff's Amended Complaint relates mostly to its first FOIA request.  Best Crabs asserts that FNS's response to its first FOIA request violated FOIA because it incorrectly asserted exemptions, leading to non-production of documents sought by Best Crabs.  *Id.* ¶ 156.  Best Crabs also asserts that FNS failed to "conduct a proper search for all responsive records."  *Id.* ¶ 157.

In both Counts II and III, Best Crabs also presents sweeping allegations regarding FNS's general responsiveness to FOIA requests.  Best Crabs asserts that FNS has a "policy and practice of failure to comply with the time requirements set forth in FOIA, especially in response to FOIA

Requests submitted by SNAP-authorized retailers." *Id.* ¶ 136. Best Crabs asserts that FNS "intentionally underfunds its FOIA Office in order to prevent the public from discovering what the agency is up to." *Id.* ¶ 139. It further asserts that FNS "intentionally fails to comply with the mandatory time requirements in the FOIA." *Id.* ¶ 141. Other than noting that "[m]ore than 700 FOIA Appeals are currently pending before FNS," *id.* ¶ 158, Best Crabs does not provide any information to support its "policy and practice" allegations. *See* Am. Compl. Nonetheless, Best Crabs seeks a declaration that FNS has a "de facto policy of violating FOIA," and that FNS engages in a "pattern and practice of violating FOIA." *Id.* at 22-23.

## **LEGAL STANDARD**

Courts may dismiss a plaintiff's complaint under Rule 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Although "no technical forms of pleading are required, a complaint must 'give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Engle v. United States*, 736 F. Supp. 670, 671 (D. Md. 1989), *aff'd*, 902 F.2d 28 (4th Cir. 1990) (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If the Court decides to convert this motion to a summary judgment motion, the Court should grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial.").  As the Supreme Court has emphasized, "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). On those issues on which the nonmoving party will have the burden of proof, it is the responsibility of the nonmoving party to confront the motion for summary judgment with evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.

Specifically with respect to Plaintiff's FOIA claims, courts have found that "[m]ost FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. U.S. Dep't of Justice*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)).  Courts may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations when they are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 62 (D.D.C. 2016) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  This is because "[s]uch affidavits or declarations 'are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).  Discovery in FOIA cases is "both rare and disfavored." *Freedom Watch v. Bureau of Land Mgmt.*, 220 F. Supp. 3d 65, 68 (D.D.C. 2016) (citation omitted).

## ARGUMENT

Plaintiff's SNAP claim challenging FNS's Final Agency Decision should be dismissed, or summary judgment should be entered in Defendants' favor, because FNS correctly rescinded Best

Crabs's SNAP authorization based on the lack of information it received from Best Crabs. Plaintiff's policy or practice FOIA claims should be dismissed because they are wholly unsupported and belied by evidence showing that there is no policy or practice of intentionally violating FOIA deadlines. Plaintiff's FOIA counts related to each of its two FOIA requests should be dismissed because Best Crabs's first FOIA request was unreasonable and FNS did respond to Best Crabs's second FOIA request.

I. **PLAINTIFF CANNOT, AS A MATTER OF LAW, ESTABLISH THAT FNS WAS INCORRECT WHEN IT DECIDED TO REVOKE BEST CRABS'S SNAP AUTHORIZATION.**

Count I of Plaintiff's Complaint asks the Court to vacate and reverse FNS's Final Agency Decision, which withdrew Plaintiff's SNAP authorization for failure to comply with the recertification process. This claim fails as a matter of law because Plaintiff cannot establish that FNS made the wrong decision with the factual information provided by Plaintiff during the recertification process.

A. It is Plaintiff's burden to establish that FNS made an erroneous decision.

Plaintiff asks that the Court vacate and reverse FNS's Final Agency Decision, and in the process muddies the legal standard by which this request should be adjudicated by asserting that the decision was arbitrary and capricious, erroneous, unsupportable, and contrary to the Food and Nutrition Act. Am. Compl. ¶¶ 122-25. The applicable statute in this case is 7 U.S.C. § 2023, and this statute provides aggrieved stores "with the opportunity to obtain judicial review of the final USDA determination by filing a complaint against the United States in district court." *Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010). The statute mandates that such a suit in district court "shall be a trial de novo . . . in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15).

The statute provides no further guidance as to the burden of proof, but circuit courts consistently hold that "a store owner who seeks to set aside an agency action bears the burden of proof." *See Fells*, 627 F.3d at 1253 (citing *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997); *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991); *Redmond v. United States*, 507 F.2d 1007, 1011-12 (5th Cir. 1975)). District courts are to "determine the validity of the questioned administrative action, not revisit the issue as if the USDA decision never had occurred." *See Fells*, 627 F.3d at 1253 (internal quotations omitted). Put another way, a plaintiff attempting to upset a USDA disqualification determination bears "the burden of proving, by a preponderance of the evidence, that the agency's determination was invalid." *Id.* To prove the determination was invalid, a plaintiff may demonstrate "that the factual determination was wrong." *Id.* Here, Best Crabs cannot, as a matter of law, establish that FNS's decision was incorrect.

B. Best Crabs did not submit information sufficient to allow FNS to independently determine whether Best Crabs met SNAP requirements.

Best Crabs cannot establish that FNS incorrectly withdrew its SNAP authorization. As the evidence of record shows, FNS withdrew Best Crabs's authorization because it could not determine, from the information provided by Best Crabs, whether Best Crabs was effectively operating as a restaurant (and not a retailer of staple foods), deriving 50% or more of its sales from cooked, heated, or prepared foods. A.R. at 2217-2224. The information Best Crabs submitted to FNS regarding its revenue sources was as follows:

- a statement that "exact figures" with respect to prepared and heated foods "are unknown." *See* A.R. at 89.

- An admission that the amount of gross retail sales that were (1) heated or prepared foods, (2) non-foods, (3) accessory foods, and (4) staple foods were "unknown" to Best Crabs. A.R. at 112.

- Illegible guest checks and invoices. A.R. at 2058-2118.

- An acknowledgement that it did not maintain copies of sales register receipts on a routine basis, it did not use a sophisticated point-of-sale system, and that its register receipts and guest tickets provide no indication regarding whether the customer intends to eat the food at home or another location. Am. Compl. ¶¶ 43-46.

- A "declaration" which stated that it was Best Crabs's "***opinion***" that "sales of heated or prepared foods during the requested three week period totaled ***approximately*** $78,769.72" and staple foods that were neither cooked nor heated "totaled ***approximately*** $98,411.82." A.R. at 2013 (emphasis added).

- A statement that it maintains cooked/heated/prepared food receipts "in a separate pile until the end of each work day" but "does not differentiate on its register receipts between items that are cooked or heated post-sale." A.R. at 2120.

- An admission that its register receipts "do not contain the type of detail that would permit FNS to determine which eligible food items were cold and then heated post-sale" and "would not inform FNS regarding whether the customer intended to consumer the products at home or another location." A.R. at 2027.

- An admission that information it provided does "not contain all of the requested data," including the "date, items sold, price of item, sales tax, and the total." *Id.*

- An admission that its "cashiers do not use an identifier to indicate whether eligible food items are hot or prepared foods." A.R. at 2120.

- A statement of Mr. Devine noting that he personally "reviewed each of the guest checks during the three week period" and "tabulated the sales amount of each item on each guest check in one of the sales categories requested by FNS." *Id.*

- A statement of Mr. Devine that he "is intimately familiar with the items sold at Best Crabs and the handwriting of his clerks" and he "personally determined whether each item was an eligible food item." *Id.*

From these submissions, which include several admissions that Best Crabs could not provide the information requested and statements indicating that only Mr. Devine could determine the sources of its revenue, there was no way for FNS to determine whether Best Crabs was operating as a non-compliant restaurant or as a firm that properly could be re-authorized under SNAP. *See supra*. Thus, FNS reached the only logical conclusion it could in its Final Agency Decision, explaining that "as a result of the store's failure to cooperate, Retailer Operations Division was unable to make a determination regarding Appellant's eligibility." A.R. at 2223.

Best Crabs cannot, as a matter of law, meet its burden "of proving, by a preponderance of the evidence, that the agency's determination was invalid" or "wrong." *See Fells*, 627 F.3d at 1253. Summary judgment should be entered for Defendants.

## II. PLAINTIFF'S "POLICY AND PRACTICE" FOIA CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff seeks a declaration that FNS has and had a policy and practice of intentionally violating FOIA by failing to timely respond to FOIA requests and FOIA appeals from SNAP retailers. *See* Am. Compl. at 20. But, as other courts have concluded when considering similar allegations and summary judgment evidence, FNS has no such policy or practice. As explained in the attached declaration from Daren Krellwitz, FNS's policy is "to fully comply with FOIA and to continue improving its FOIA operations." Ex. E, Declaration of Daren Krellwitz ¶ 7 ("Krellwitz Decl."). In addition, there is no genuine issue of material fact and Best Crabs's allegations are without support and foundation. The Court should therefore grant summary judgment to FNS on Plaintiff's "policy or practice" claims.

### a. FOIA policy or practice claims are confined to cases where agencies egregiously adhere to an improper policy or practice.

A federal court's jurisdiction under the FOIA "is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). Courts have recognized that parties may state claims for an agency's "policy or practice" of FOIA non-compliance. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 895 F.3d 770, 778 (D.C. Cir. 2018) (noting that in the D.C. Circuit, "it is settled law that informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim"). To state a policy or practice claim under FOIA, the plaintiff must plead "(1) some policy or practice that (2) results in repeated violation of FOIA." *Am. Ctr. for Law &*

*Justice v. U.S. Dep't of State*, 254 F. Supp. 3d 221, 224 (D.D.C. 2017). Stated another way, a plaintiff must "plausibly allege that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA." *Id.* The allegedly illegal "FOIA policy or practice may be informal, rather than articulated in regulations or an official statement of policy." *Id.*

Although policy and practice claims may be pled, they may only be pled successfully in narrow circumstances. To that end, allegations of "delay alone" are not sufficient to state a policy or practice claim. *Id.* (quoting *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 72 (D.D.C. 2016) ("[D]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable"). Rather, the allegations need to be significant for a policy and practice claim to survive. For example, in *Payne Enterprises, Inc. v. United States*, Air Force officers had repeatedly denied the plaintiff's FOIA requests, "perfunctorily" invoking inapplicable exemptions on the apparent belief that the Air Force might have to pay higher prices to contractors if it produced the information. 837 F.2d 486, 487 (D.C. Cir. 1988). The officers continued to deny the requests even though the Secretary of the Air Force uniformly reversed their determinations and ordered them to produce the documents. *Id.* at 489-90; *see also id.* at 489 (noting that the Secretary had advised the officers that their position was "wholly unjustified"). The D.C. Circuit concluded that the Air Force's persistent refusal to end an unjustified practice was "sufficiently outrageous" to warrant the fashioning of equitable relief. *Id.* at 494; *see also id.* at 488, 491 n.8 (finding that the Air Force had committed multiple "clear violations of the FOIA" that arose from a "concerted policy").

Similarly, in *Long v. IRS*, 693 F.2d 907 (9th Cir. 1982), the IRS was involved in a near-decade long series of disputes with the plaintiffs regarding FOIA requests. Although the IRS

conceded that the requested records were not exempt from disclosure under the FOIA, IRS only "voluntarily" released documents after the plaintiffs filed lawsuits seeking them, mooting the cases but making clear that it retained the right to claim in the future that similar documents were exempt from production. *Id.* at 908, 910. The court concluded that this "abuse" of FOIA's administrative scheme could warrant injunctive relief. *Id.* at 910.

In sum, the conduct at issue must be "***wholly unjustified***." *Cause of Action Inst.*, 224 F. Supp. 3d at 74; *see also ACLJ II*, 2018 WL 623827, at *3 (holding that a policy-or-practice claim requires agency conduct that is "sufficiently outrageous"). Accordingly, agency delay, in and of itself, in responding to FOIA requests—even repeated delay—is insufficient to establish a viable policy-or-practice claim. *ACLJ II*, 2018 WL 623827, at *3.

      b.    There is no evidence that FNS has a policy or practice of intentionally refusing to <u>respond to FOIA requests and FOIA appeals of SNAP participants</u>.

Plaintiff asserts policy or practice FOIA claims in Counts II and III of its Amended Complaint. Plaintiff alleges that "FNS has a policy and practice of failure to comply with time requirements set forth in FOIA, especially in response to FOIA Requests submitted by SNAP-authorized retailers." Am. Compl. ¶ 136. Best Crabs claims that FNS fails "a majority of the time" to meet its target dates listed in acknowledgement letters to FOIA requesters. *Id.* ¶ 137. Best Crabs claims that FNS underfunds its FOIA office and intentionally fails to comply with FOIA deadlines "in order to prevent the public from discovering what the agency is up to." *Id.* ¶¶ 139, 141. Best Crabs also claims that "[m]ore than 700 FOIA Appeals are currently pending before FNS." *Id.* ¶ 158. Because Best Crabs provides nothing more than generalized and conclusory allegations with no support, it has not stated a claim as a matter of law.

Best Crabs does not state a policy or practice FOIA claim because it asserts threadbare conclusions with no support. Best Crabs provides no support for its claim that FNS has a policy

or practice of intentionally failing to respond and understaffing its FOIA office for the purpose of obfuscating its actions. *See id.* ¶¶ 136, 139-41. Best Crabs claims that more than 700 FOIA appeals are pending but fails to explain (1) where that information comes from, (2) how many of those appeals are beyond their deadlines and by how much, and (3) why this number amounts to a policy or practice issue. *See id.* ¶ 150. In other words, this allegation is completely without context and cannot establish a policy or practice violation of FOIA. For the same reasons, Best Crabs's allegation that FNS fails "a majority of the time" to meet target dates it sets in acknowledgment letters also cannot support a policy or practice claim – Best Crabs provides no support or context for this allegation.

Moreover, FNS's handling of Best Crabs's FOIA requests cannot alone support a policy or practice claim. FNS was in contact with Best Crabs on a consistent basis while its FOIA requests were pending and produced documents in response to both. Best Crabs seems to believe that FNS did not respond at all to its second FOIA request, but FNS did respond and did produce documents. *See* Ex. D. FNS also responded and produced responsive documents to Best Crabs's first FOIA request. *See id.* Although Best Crabs may not agree with FNS's decision to withhold certain documents from production in response to the first FOIA request, one disagreement about the scope of FNS's production obligations cannot be the basis of a policy or practice claim. As such, the policy and practice claims embedded in Counts II and III of Plaintiff's Amended Complaint fails to state viable claims and should be dismissed.

      c.    Evidence submitted by FNS makes clear that it does not adhere to any policy or practice of shirking FOIA deadlines.

Even if the Court finds that Plaintiff did state a policy or practice claim, the summary judgment evidence is uncontroverted that FNS has no policy or practice of intentional delay. As described in the attached declaration from Mr. Krellwitz, FNS has no practice or policy of

intentionally violating FOIA, whether refusing to produce documents in response to a FOIA request until the requester initiates litigation or for any other reason. *See* Krellwitz Decl. ¶¶ 8-11. And Mr. Krellwitz would know if such a practice or policy existed: he is the Acting Branch Chief of FNS's Information Management Office, making him the "FNS official immediately responsible for supervising those IMO employees responding to requests for records under FOIA." *Id*. ¶ 3; *see also id*. ¶ 5 (noting that he is familiar with "all of FNS's policies and practices, both formal and informal, concerning responses to FOIA requests"). Instead, FNS's policy is "to fully comply with FOIA." *Id*. ¶ 7. For example, FNS resolves hundreds of FOIA requests on an annual basis, and regularly does so without the requestor filing suit. *See id*. ¶ 24 ("FNS regularly resolves FOIA requests without litigation."). FNS also grants hundreds of FOIA requests in part or in whole every year. *See id*. ¶¶ 26-27. This evidence alone serves to disprove the existence of any policy or practice along the lines of what Plaintiff alleges.

Additionally, FNS has undertaken a concerted effort to reduce its FOIA backlog, which had grown substantially in past years due to a massive increase in FOIA requests submitted to FNS. Krellwitz Decl. ¶¶ 16, 18 (noting that FOIA requests increased from 513 in FY 2016 to 898 in FY 2018, and that FNS "participated in a major department-wide FOIA appeals backlog reduction initiative" to the tune of $863,000). FNS has made efforts to obtain additional resources to process FOIA requests, including submitting a hiring plan seeking to "increase its staffing from 1 FOIA/PA Officer to 3" officers. *Id.* ¶¶ 12-13.

Accordingly, there is no evidence to support—and, accordingly, no genuine issue of material fact regarding—Plaintiff's policy-or-practice claim based on intentional delay. *See ACLJ II*, 2018 WL 623827, at *3 ("Reviewing the undisputed record, the Court finds no evidence that State has any policy, formal or otherwise, of forcing requesters to file suit before releasing

material."); *see also Judicial Watch*, 211 F. Supp. 3d at 146 (allegations of delay are insufficient when such "inevitable but unintended delay [could be] attributable to a lack of resources").

      d.    The evidence regarding FNS's FOIA resources and training disproves Plaintiff's policy or practice allegations.

There is no evidence supporting Plaintiff's allegations regarding the means by which FNS supposedly carries out the alleged policy or practice of ignoring FOIA deadlines. Plaintiff contends that FNS engages in a policy or practice of FOIA noncompliance by refusing to obtain or allocate sufficient resources to meet its FOIA obligations. *See* Am. Compl. ¶¶ 138, 139, 159, 160. Plaintiff neither cites to nor provides any evidence or support for these allegations. And contrary to Plaintiff's unsupported allegations, the evidence undisputedly shows that FNS is working to strengthen its FOIA operations, disproving Plaintiff's policy and practice allegations.

FNS's approach in recent years regarding its FOIA operations contradicts Plaintiff's narrative of an agency intentionally underfunding those operations. FNS "participated in a major department-wide FOIA appeals backlog reduction initiative, with the intent that FNS would make significant progress against its SNAP Retailer FOIA Appeal backlog while still maintaining the highest standards of quality review. This investment cost approximately $863,000." Krellwitz Decl. ¶ 18. In addition, FNS hopes to add two FOIA/PA officers, as it only has one such officer as of the date of this filing. *Id.* ¶ 13. Thus, contrary to Plaintiff's suggestions, FNS has no intentional policy or practice of understaffing or underfunding its FOIA operations. *Id.* ¶ 11.

FNS has also taken steps in recent years to improve the quality of its FOIA training programs. In FY 2018, "FNS engaged in several training activities to enhance FOIA personnel processing skills." *Id.* ¶ 30. "A variety of FOIA procedural issues were addressed" at these training activities, including "the importance of conducting an adequate search and the importance of timely searches." *Id.* ¶ 31. FNS also "made efforts to provide training to non-FOIA

professionals regarding FOIA and their obligations." *Id.* ¶ 32. Because these are not the behaviors of an agency attempting to stymie its own compliance with FOIA, if not dismissal, the Court should enter summary judgment for Defendants on Plaintiff's policy and practice claims.

### III. THE COURT SHOULD REJECT BEST CRABS'S SPECIFIC FOIA CLAIMS.

Best Crabs asserts two specific FOIA claims relating to each of its two FOIA requests to FNS. The Court should dismiss these claims, or enter judgment for Defendants, because FNS did respond to Best Crabs's second FOIA request and because Best Crabs's first request was unreasonably burdensome and not reasonably described.

a. Count II of the Amended Complaint should be rejected because FNS did respond to <u>Best Crabs's second FOIA request</u>.

Best Crabs submitted its second FOIA request on November 21, 2018, seeking records relating to its own SNAP authorization. ECF No. 10-2. In Count II of its Amended Complaint, Best Crabs asserts that FNS violated FOIA by failing to respond to this request. Am. Compl. ¶¶ 132-33. But FNS did respond to this request on April 29, 2019. *See* Ex. D. FNS indicated that it located 21 pages responsive to Best Crabs's request and produced those documents to Best Crabs's counsel.[4] *Id.* FNS further indicated that Best Crabs could appeal FNS's response. *Id.* Best Crabs does not allege that it filed any such appeal. *See* Am. Compl. ¶¶ 127-36.

The Court should enter judgment in favor of Defendants because FNS did respond to Plaintiff's second FOIA request, proving that this claim has no merit as a matter of law.

---

[4] As noted above, the documents responsive to Best Crabs's second FOIA request overlap almost entirely with some of the categories of documents in its first FOIA request.

b. Count III of the Amended Complaint should be dismissed because the disputed portions of its first FOIA request were unduly burdensome and not properly <u>described</u>.

Count III of the Amended Complaint focuses on Plaintiff's first FOIA request, which requested several wide-ranging categories of documents. Although it is not clear from the Amended Complaint, it appears as though Plaintiff believes that FNS improperly refused to produce information responsive to its requests numbered 4, 5, 6, and 7. *See* Am. Compl. ¶¶ 146-63. Those requests sought:

4) All hard copy and electronic records, including but not limited to, letters, e-mails, other correspondence, investigatory and other reports, memoranda, guidance, handbook or handbook provisions, dated on or after January 1, 2016, regarding FNS's Final Rule, issued on December 8, 2016, entitled Enhancing Retailer Standards in the Supplemental Nutrition Assistance Program (SNAP), which concern or relate to [certain key words in the Final Rule];

5) All correspondence to or from any SNAP authorized retailer located in Maryland, the District of Columbia, Virginia, or Delaware, dated on or after August 1, 2017, regarding, concerning, or related to the authorization, re-authorization, withdrawal, or potential withdrawal of a retail food store's SNAP authorization based on FNS's determination that "the firm is primarily a restaurant" or based on 7 CFR 278.1(b)(iv);

6) All correspondence to or from any SNAP authorized retailer located in Maryland, the District of Columbia,, Virginia, or Delaware, dated on or after August 1, 2017, regarding, concerning, or related to the denial of a retail food store's application for SNAP authorization based on FNS's determination that the firm is not eligible for SNAP authorization because "the firm is primarily a restaurant" or based on 7 CFR 278.1(b)(iv); and

7) All records, including correspondence sent to or received from [a list of six people] concerning the authorization, re-authorization, or withdrawal of the SNAP authorization of any retailer because FNS believes, contends, alleges, and/or determined that the firm is a restaurant.

*See* ECF No. 10-1. FNS properly refused to produce records responsive to these requests because they are overly broad, unduly burdensome, and not sufficiently described.

For a FOIA request to be proper and trigger an agency's obligations, it must "reasonably describe" the records sought. 5 U.S.C. § 552(a)(3)(A). A request is "reasonably described" only if it enables a professional agency employee familiar with the subject area to locate the record with a "reasonable amount of effort." *See, e.g., Truitt v. Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990); *Ferri v. Dep't of Justice*, 573 F. Supp. 852, 859 (W.D. Pa. 1983) (granting summary judgment where plaintiff failed to provide sufficient information to allow agency to retrieve requested information "with a reasonable amount of effort") (citing *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)). Requests that are so broad and sweeping that they lack specificity are not reasonably described. *Marks*, 578 F.2d at 263 ("broad, sweeping requests lacking specificity are not permissible"). Put another way, courts have held that agencies are not required to conduct wide-ranging, "unreasonably burdensome" searches for records. *See, e.g., Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995) (agreeing that search requiring review of twenty-three years of unindexed files would be unreasonably burdensome, but disagreeing that search through chronologically indexed agency files for dated memorandum would be burdensome); *AFGE v. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (holding that "while [plaintiff's requests] might identify the documents requested with sufficient precision to enable the agency to identify them . . . it is clear that these requests are so broad as to impose an unreasonable burden upon the agency," because agency would have "to locate, review, redact, and arrange for [the] inspection [of] a vast quantity of material"); *Van Strum v. EPA*, Nos. 91-35404, 91-35577, 1992 WL 197660, at *1 (9th Cir. 1992) (FOIA does not require agencies to conduct "unreasonably burdensome" searches for records).

"The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters," or to allow requesters to conduct "fishing

expedition" through agency files. *Assassination Archives & Research Ctr. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989*), aff'd in pertinent part*, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990) (per curiam); *Immanuel v. Sec'y of the Treasury*, No. 94-884, 1995 WL 464141, at *1 (D. Md. Apr. 4, 1995), *aff'd*, 81 F.3d 150 (4th Cir. 1996) (unpublished table decision); *see also Dale v. IRS*, 238 F. Supp. 2d 99, 104-05 (D.D.C. 2002) (concluding that request seeking "any and all documents . . . that refer or relate in any way" to requester failed to reasonably describe records sought and "amounted to an all-encompassing fishing expedition of files at [agency's] offices across the country, at taxpayer expense").

Best Crabs's requests 5-7 seek "all correspondence to or from any SNAP authorized retailer" from four different jurisdictions (Maryland, Virginia, Delaware, and the District of Columbia) from August 1, 2017 to present relating to: the denial, "authorization, re-authorization, withdrawal, or potential withdrawal of a retail food store's SNAP authorization based on FNS's determination that the firm is primarily a restaurant." ECF No. 10-1 at 1-2. These requests are unreasonable and searching for and producing these documents would be unduly burdensome for several reasons. First, Best Crabs does not make clear exactly what it is looking for in response. In addition, the volume of potentially responsive documents is significant. Best Crabs asks FNS to search records from four different jurisdictions essentially by hand, as FNS cannot use keywords to search its relevant databases for responsive documents. *See* Ex. A at 8. Moreover, Plaintiff is using this request to obtain information about FNS's handling of other SNAP authorizations, perhaps hoping to shed light on SNAP authorizations that were handled differently than Best Crabs's reauthorization. But these documents, even if they could be located, are not relevant to FNS's decision to withdraw Best Crabs's SNAP authorization. Best Crabs did not provide information FNS needed to determine whether Best Crabs was authorized, A.R. 2217-24, and no

amount of information about **other food stores** relate to whether FNS in fact had enough

information regarding Best Crabs's authorization.  FNS is not required to oblige an all-

encompassing fishing expedition for an unreasonably large amount of documents.  *Dale*, 238 F.

Supp. 2d at 104-05.  Thus, Best Crabs's requests 5-7 are overbroad, and FNS's response thereto

fully complied with FOIA.  *See e.g., Dixon v. Dep't of Justice*, 279 F. Supp. 3d 1, 2 (D.D.C. 2017)

("Where . . . an agency's response to a FOIA request calls for 'an unreasonably burdensome

search' . . . the agency need not honor the request.").

       c.    FNS was justified in asserting Exemption 5 as the basis for withholding documents
             <u>responsive to Best Crabs requests 4 and 7</u>.

FNS was justified in refusing to produce documents responsive to Best Crabs requests 4

and 7 for the additional reason these documents are protected from disclosure by FOIA exemption

5.[5]  Best Crabs requests 4 and 7 seek all information relating to a final rule issued by FNS and

internal communications amongst FNS SNAP authorization reviewers.  ECF No. 10-1 at 1-2.

Exemption 5 permits agencies to withhold documents that are inter-agency or intra-agency

memoranda or communications which disclose the agency's deliberative process.  *See* 5 U.S.C. §

552(b)(5).  This exemption protects pre-decisional documents regarding legal or policy matters.

*Id.*  Best Crabs's request 4 seeks documents that fall precisely within this exemption, meaning Best

Crabs's FOIA claim relating to these documents should be rejected.  Best Crabs's request 7,

seeking internal communications amongst SNAP authorization reviewers, may also, depending on

---

[5]  It is not clear from Plaintiff's Amended Complaint if it challenges FNS's decision to withhold, based on
Exemption 5, documents relating to its requests 1 and 2, as Best Crabs provides nothing more than
conclusory mentions of those requests.  See Am. Compl. ¶¶ 156 (noting an improper assertion of
exemptions but not identifying which requests or which exemptions), 163 (a)-(k) (mentioning the
exemption cited by FNS but not explaining the issue with these assertions).  To the extent that Best Crabs
believes these assertions of exemptions was improper, Best Crabs did not provide sufficient information to
state a claim for improper withholding and the claim should be denied.  Defendants reserve the right to
provide more information if Plaintiff is pursuing this claim.

what exactly Best Crabs was looking for in response, fall under this exemption. As such, FNS correctly asserted Exemption 5 in its refusal to produce documents responsive to requests 4 and 7, and judgment should be entered for Defendants on this claim.[6]

## **CONCLUSION**

For the foregoing reasons, the United States of America, on behalf of the United States Department of Agriculture, respectfully requests that this Court dismiss the Amended Complaint or enter summary judgment for Defendants on all claims not dismissed.

Respectfully submitted,

Robert K. Hur
United States Attorney

*/s/ Matthew A. Haven*
Matthew A. Haven, Bar No. 18602
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
matthew.haven@usdoj.gov

---

[6] Moreover, for the reasons listed above, it would have been unduly burdensome for FNS to search for and produce documents responsive to requests 4 and 7.